**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09-cv-252-FDW
(3:05-cr-00400-FDW-6)**

| | |
|---|---|
| DIANE BEVERLY SIGUENZA, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence filed under 28 U.S.C. § 2255, (3:09-cv-252, Doc. No. 1), and the Government's motion to dismiss. (Doc. No. 3). The Court advised Petitioner of her obligation to respond to the Government's motion, (Doc. No. 5), and Petitioner has filed her response. For that reasons that follow, Petitioner's Section 2255 motion will be denied and dismissed, and the Government's motion will be granted.

**I.    BACKGROUND**

On December 5, 2006, Petitioner was charged, along with eleven others, in an eighty-six count, third superseding indictment. (3:05-cr-400, Doc. No. 84). The indictment involved allegations of a telemarketing scheme whereby Petitioner and others informed potential victims that they had won a sweepstakes. In order to receive the "valuable prize," the potential victims were asked to send money, from a thousand to several thousand dollars, to cover a "refundable insurance fee" via Western Union money wire-transfers.

Count One charged Petitioner with conspiracy to obtain money by means of materially false pretenses through the use of the United States mail and other interstate carriers, including wire

transfers in interstate and foreign commerce, in violation of 18 U.S.C. §§ 1341, 1343, and 2314. (Id. at 4). Counts Two through Forty-Three charged Petitioner and others with wire fraud in connection with the conspiracy, in violation of 18 U.S.C. §§ 1343, 2326(2) and 2. (Id. at 11-15). Count Forty-Four charged Petitioner and others with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). (Id. at 15-17). Counts Forty-Five through Eighty-Six charged Petitioner and others with money laundering through concealing the location and proceeds of the unlawful activity, in violation of 18 U.S.C. § 982(a)(8). (Id. 17-19). Additionally, the indictment provided a notice of wire fraud and money laundering forfeiture of a sum of money representing the amount of proceeds derived from the conspiracy up to a value of $10,000,000. (Id. at 19-22). The notice provided that upon conviction, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), in the event the recovered proceeds could not pay the full amount of restitution, each defendant shall forfeit substitute property up to the amount of $10,000,000. (Id.).

Petitioner was represented by counsel and entered into a Plea Agreement with the Government. Through the Plea Agreement, Petitioner agreed to plead guilty to Count One and Count Thirty-Four of the third superseding bill of indictment in return for the Government's agreement to dismiss the remaining 84 counts. (Doc. no. 179). On November 13, 2007, Petitioner appeared with counsel before United States Magistrate Judge David Kessler for her Rule 11 hearing. Following a lengthy colloquy, the court accepted Petitioner's plea of guilty to Counts One (conspiracy) and Thirty-Four (wire fraud). (Doc. No. 182: Acceptance and Entry of Guilty Plea).

On October 29, 2008, Petitioner, while represented by counsel, entered into an agreement to forfeit real property owned by Petitioner located at 40 Kindred Court in Chico, California. (Doc. No. 283: Consent Order and Judgment Directing Forfeiture of Property). That same day, Petitioner was sentenced to concurrent terms of 80-months imprisonment for conviction on Count One and

80-months imprisonment for conviction on County Thirty-Four. The remaining 84 counts were dismissed. In addition, Petitioner was ordered to pay $10,000,000 to the victims, with all convicted defendants to be jointly and severally liable for such amount. (Doc. No. 285: Judgment in a Criminal Case).

On November 14, 2008, Petitioner's counsel entered a notice of appeal from the sentence on her behalf. (Doc. No. 290). On December 31, 2008, Petitioner's appeal was dismissed by agreement pursuant to Rule 42(b) of the Rules of Appellate Procedure. (Doc. No. 303).

On April 30, 2009, Petitioner filed a pro se motion to stay execution of the forfeiture of the real property located at 40 Kindred Court which was identified in the Consent Order and Judgment Directing Forfeiture. (Doc. No. 319). Among other things, Petitioner argued that her agreement to sign the Consent Order was obtained in violation of her right to due process based on "defense counsel's coercive threats." (Id. at 2). On May 5, 2009, the Court entered an Order informing Petitioner that the motion to stay would be treated as a Section 2255 motion for relief because the arguments were squarely centered on ineffective assistance of counsel and prosecutorial misconduct. Consequently, as Petitioner's time to file an appeal had expired, her only avenue for relief was by way of a § 2255 motion. (Doc. No. 322).

Petitioner then filed the present Section 2255 motion. (3:09-cv-252, Doc. No. 1). Petitioner contends that she received ineffective assistance of counsel; that the Government colluded with her defense counsel to breach her Plea Agreement; and that her Fifth Amendment rights were violated through the forfeiture proceedings. In her claim for relief, Petitioner asks that she be allowed to file an out-of-time appeal; for enforcement of the Plea Agreement, that the Consent Order and Judgment Directing Forfeiture of Property be nullified, and for appointment counsel if there are further proceedings. (Id. at 14).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Government filed a response and motion to dismiss Petitioner's Section 2255 motion.

Petitioner has not requested an evidentiary hearing. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the United States Constitution guarantees that a defendant charged with a criminal offense has the right to effective assistance of counsel. In order to establish a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that she was prejudiced by constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992)

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). The Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id.

In the context of a guilty plea, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). When a petitioner alleges her counsel was ineffective during the sentencing hearing, petitioner must demonstrate that her "sentence would have been more lenient" without counsel's asserted errors. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

### A. Ineffective Assistance of Counsel

#### 1. Conflict of Interest

Petitioner contends that she received ineffective assistance of counsel because her trial counsel represented her and a co-defendant, Sunny Richard Siguenza, who is also Petitioner's son. (3:09-cv-252, Doc. No. 1-1 at 1).[1] Petitioner claims that her attorney failed to inform her that it was a conflict of interest to represent both her and her son at the same time. Besides addressing the general rules regarding conflict of interest, Petitioner otherwise fails to address how she was prejudiced and thus she has failed to carry her burden under Strickland.

Petitioner intimates that joint representation constitutes per se ineffective assistance of counsel, however "the mere fact of joint representation does not per se establish the denial of effective assistance of counsel." Kibert v. Blankenship, 611 F.2d 520, 526 (4th Cir. 1979), cert. denied, 446 U.S. 911 (1980). On or about April 17, 2007, Sunny Richard Siguenza entered a written waiver of his right to indictment and agreed to proceed by bill of information. (3:07-cr-86, Doc. Nos. 7; 8, respectively). On April 17, 2007, Sunny entered into a Plea Agreement with the Government and he appeared with counsel for his Rule 11 hearing that same day. In the Plea Agreement, Sunny agreed to plead guilty to one count of conspiracy and one count of wire fraud and to pay $5,000,000

---

[1] Both Petitioner and Sunny were charged, convicted and sentenced in the Western District for their participation in the sweepstakes scheme.

in restitution to the victims of the sweepstakes scheme. (Doc. No. 9). In Sunny's presentence investigation report ("PSR), nine cases were identified as related to Sunny's case, that is, all ten of the cases involved the same sweepstakes scheme. In one of those cases, Petitioner was named as a defendant. (Doc. No. 12, at 2).

Petitioner was first named in a criminal complaint on March 30, 2006, and a warrant for her arrest was issued that same day. (3:05-cr-400, Doc. Nos. 3 and 4, respectively). On July 27, 2006, Petitioner was named in a superseding bill of indictment, and a new arrest warrant was issued. (Doc. Nos. 52 and 53). On August 9, 2006, the arrest warrant was returned unexecuted. (Doc. No. 63). On September 28, 2006, Petitioner was named in a second superseding indictment, (Doc. No. 64), and on December 5, 2006, Petitioner was named in the final, third superseding indictment. (Doc. No. 84). On May 18, 2007, Petitioner was arrested in Costa Rica and ultimately extradited to the Western District.[2] Petitioner appeared with counsel for her initial appearance and arraignment before United States Magistrate Judge Carl Horn on May 22, 2007.

On October 31, 2007, Petitioner entered into her Plea Agreement with the Government, which is over six months after Sunny entered into his Plea Agreement. Like Sunny's agreement, Petitioner's agreement memorialized her decision to enter a plea of guilty to one count of conspiracy and one count of wire fraud. Petitioner's Plea Agreement, though, markedly reduced her potential criminal liability by dismissing 84-counts from her indictment. The agreements do differ on the amount of restitution which each defendant agreed to pay. At first glance, Sunny's agreement to pay $5,000,000, and Petitioner's agreement to pay $10,000,000, could raise the specter of a conflict of interest. However, Petitioner's argument regarding conflict of interest fails for three reasons.

---

[2]During her sentencing hearing, the Court showed Petitioner a copy of her final PSR. Petitioner confirmed that she had reviewed the PSR with her attorney and that she understood its contents. Petitioner noted no objections to the information contained therein. (3:05-cr-400, Doc. No. 247 at 1).

First, Sunny was never named in an indictment, and certainly not named as a defendant in the same case as Petitioner, although he was involved in the same sweepstakes scheme and his case was accordingly identified as related to the nine other cases. The Government estimated his involvement in the scheme led to elderly victims, and others, being bilked out of approximately $5,000,000. Petitioner's PSR identifies her as part of the United States v. Cummins conspiracy, which was identified as related to Sunny's case.³ However, Petitioner's indictment involved the efforts of 12 individuals to defraud elderly individuals, and these 12 individuals were alleged to have defrauded the victims out of approximately $10,000,000. When considering Sunny's bill of information and Petitioner's third superseding indictment, it is apparent that Petitioner was charged with participating in a larger scheme involving more individuals and more fraud. The net result is that she and her 11 co-defendants were held responsible for twice the amount of restitution as Petitioner. Moreover, Petitioner never objected to the amount of restitution which was set forth in the third superseding indictment and which was contained in the Plea Agreement she signed and was identified in her PSR. That she agreed to pay a greater amount of restitution because she was responsible for greater loss cannot support a finding that her counsel was ineffective.

Second, Petitioner was not arrested until May 18, 2007, which is over one month after Sunny signed his Plea Agreement and entered his guilty pleas. Petitioner offers no evidence, or allegations for that matter, which could show that Sunny's earlier deal prejudiced her later deal. The Supreme Court has observed that a conflict of interest stemming from multiple representation may prevent an attorney "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution." Holloway v. Arkansas, 435 U.S. 475, 490 (1978). Here, the record shows that Petitioner's counsel had already been able to limit Sunny's exposure. The only argument Petitioner

---

³ Petitioner's case is known by the name Cummins, because the first defendant named in Petitioner's third superseding indictment is Charles Robert Cummins.

could offer is the difference in restitution. Again, given the fact that Petitioner's criminal activity was examined collectively with her 11 co-defendants, the difference in restitution does not support a finding of a conflict of interest, or more to the point, prejudice to Petitioner.

Third, on October 31, 2007, over six months after Sunny reached his deal with the Government and entered his guilty pleas, Petitioner signed her Plea Agreement with the Government and therein agreed that she was responsible for $10,000,000 in restitution to the victims, jointly and severally with her 11 co-defendants. Nearly two weeks later, Petitioner appeared with counsel for her Rule 11 hearing and was placed under oath, and Petitioner averred that she was satisfied with the services of her attorney. When given the opportunity to express her opinion regarding her attorney's services, she replied that she was satisfied with his services, and that he was a good guy. In fact, Judge Kessler noted her statement on the Acceptance and Entry of Guilty Plea. (3:05-cr-400, Doc. 182 at 4).

After considering the amount of time Petitioner faced if convicted following a trial, the undersigned cannot find that Petitioner's counsel provided ineffective representation. Through her counsel's efforts, Petitioner was able to have 84-counts dismissed, in return for pleading guilty to just two counts of the indictment. Her counsel's efforts, and her decision to admit responsibility and accept the Plea Agreement reduced her potential incarceration from a possible 30-years, or 360 months, to 80 months in prison. In particular, Petitioner cannot show that but for the alleged conflict of interest Petitioner would have declined to plead guilty and insisted on going to trial. See Hill, supra at 59 (because Petitioner plead guilty, she must show "that there is a reasonable probability that, but for counsel's errors, [she] would not have plead guilty and would have insisted on going to trial."). In her memorandum in support of her Section 2255 motion, Petitioner makes it perfectly clear that it was her decision to plead guilty and that even though she is pursuing relief through this

Section 2255 motion, she "does not wish to withdraw her plea of guilty." (3:09-cv-252, Doc. No. 1-1 at 5).

In sum, the Court finds that Petitioner has failed to carry her burden to prove <u>Strickland</u> prejudice and her claim regarding ineffective assistance of counsel based on a conflict of interest will be denied.

    2.    <u>Failure to File Appeal</u>

Petitioner makes much of the allegation that her attorney coerced her into withdrawing her appeal in an effort to demonstrate prejudice. However, Petitioner overlooks the fact that her appeal was in fact filed by her attorney on her direction and was later withdrawn, again, on her direction. Petitioner contends that she withdrew the appeal because her counsel threatened her with a 20-year sentence, but this can, even if true, scarcely have motivated her to withdraw her appeal as Petitioner had already been sentenced to a term of 80 months. (3:05-cr-400, Doc. Nos. 290: Notice of Appeal; and 303: Order on Dismissal).

To the extent Petitioner contends that she withdrew the appeal because of the fear of a 20-year sentence following a successful appeal, this fear is well-founded. Petitioner appears to argue that her counsel placed her in fear by informing her that if her appeal was successful and her conviction and sentence were vacated that she could have been sentenced to 20-years if later convicted at trial. As Petitioner was clearly informed during her Rule 11 hearing, she faced a maximum term of imprisonment far in excess of 20 years if convicted of the 86-counts in her indictment. During her Rule 11 hearing, Petitioner was present with counsel and placed under oath. The terms of her Plea Agreement pertaining to the minimum and maximum term of imprisonment were read aloud during her Rule 11 hearing. Petitioner averred that she understood the maximum penalty for wire fraud was 20 years, plus an additional 10-year term of imprisonment because the

sweepstakes scam involved telemarketing. (Doc. No. 179: Plea Agreement, at 2-3).

Counsel has an obligation in every instance to inform a client of the minimum and maximum penalties involved if the client elects to reject a guilty plea and take their case to trial. The Court finds that informing Petitioner of the possibility of a 20-year term of imprisonment was well within his obligation to provide effective assistance to Petitioner. The record shows that Petitioner decided to withdraw her appeal because she feared a possible term of 20 years, and this is a fact of which she was informed by her counsel. This shows that Petitioner, while fearful of a 20-years sentence, made a conscious decision to limit her exposure by withdrawing her appeal. Accordingly, Petitioner has failed to carry her burden of proving Strickland prejudice and this claim is therefore denied.

B.  Forfeiture of the Property

The Court will address Petitioner's Second and Third claims for relief together because both claims are directly related to the voluntariness of her decision to sign the Consent Order and Judgment Directing Forfeiture of Property. At issue, is alleged conduct on the part of Petitioner's trial counsel and the Government which Petitioner contends was coercive and ultimately compelled her to sign the Consent Order against her will. Petitioner also maintains that the conduct at issue caused a breach of the Plea Agreement and violated her Fifth Amendment right to due process. (3:09-cv-252, Doc. No. 1-1 at 5-9).

As previously noted, Petitioner confirms that she "does not wish to withdraw her guilty plea." (Id. at 5). Instead, Petitioner seeks an order which makes the Plea Agreement binding on the Government. She explains that the Plea Agreement "contained a specific promise which was used to induce [Petitioner's] plea of guilty." (Id.). This "promise" in the Plea Agreement is a boilerplate provision which informs Petitioner that, because there is more than $500 in restitution, fines, and/or assessment involved upon her conviction, the Government will file a lien against any property in

which Petitioner has an interest. The Plea Agreement further informs Petitioner that the lien will last for a period of 20 years. (3:05-cr-400, Doc. No. 179 at 8 ¶ 9).

Petitioner makes plain that she would prefer this alternative of a lien on her property, rather than having the restitution made from substitute property in the event that the recovered proceeds from the sweepstakes fraud were insufficient to cover the full amount of restitution. Petitioner agreed to plead guilty to one count of wire fraud and one count of conspiracy and Petitioner was later convicted of those offenses. In her Plea Agreement, she agreed to make full restitution to the victims upon conviction. The third superseding indictment clearly provides that upon conviction of those counts that Petitioner would be responsible for restitution to the victims in the amount of $10,000,000, jointly and severally with the other defendants who were convicted. (Doc. No. 84 at 19-22). What Petitioner fails to appreciate is that the third superseding indictment also provided unmistakable notice that if the proceeds recovered from the sweepstakes fraud did not reach $10,000,000, then "each defendant shall forfeit substitute property, up to the value of the amount" of $10,000,000. (Id. at 20 ¶ 3, 21 ¶ 3).

On the day of her sentencing Petitioner signed the Consent Order and Judgment Directing Forfeiture of Property. (Doc. No. 283). The Property, located at 40 Kindred Court, Chino, California, was real property owned by Petitioner. It is undisputed that Petitioner agreed to and was therefore obligated to pay $10,000,000 in restitution to the victims of the sweepstakes fraud, jointly and severally with her convicted co-defendants. Petitioner does not maintain that she had the money to pay her share of the restitution at sentencing nor does she claim that the proceeds recovered from the defendants could pay this restitution tab. Therefore, her decision to quit claim her interest in the Property in favor of the Government was in her best interest and in keeping with her promise in the Plea Agreement to make restitution. A refusal to agree to provide these substitute assets would

surely have been a breach of the Plea Agreement.

Petitioner again contends that her counsel intimidated her by threatening her with a 20-year sentence. If her counsel informed that her refusal to voluntarily produce substitute assets would be in violation of the Plea Agreement, then this would be well within his reasonable, professional obligation to his client. In her Plea Agreement, Petitioner agreed to pay full restitution. Her failure to do so could mean that all of the consideration she received, the dismissal of 84-counts for instance, could be withdrawn by the Government and she would be left with no deal with the Government. Petitioner's contention that the Government somehow breached the Plea Agreement is without merit.The Property she signed away was substitute property which was properly utilized to pay towards her share of the $10,000,000 in restitution to the victims of the sweepstakes fraud.

Petitioner's Fifth Amendment claims regarding violations of due process through breach of the Plea Agreement by the Government and coercion by her attorney are not supported by the record, and they are therefore without merit and will be denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion, (3:09-cv-252, Doc. No. 1), is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive

procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: July 12, 2012

Frank D. Whitney
United States District Judge